# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| KRISTY JOHNSON and JESSICA JONES, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LIFE CARE CENTERS OF AMERICA, INC.,<br><br>Defendant. | Civil Action No. 1:25-cv-364<br><br>COLLECTIVE AND CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

## COLLECTIVE AND CLASS ACTION COMPLAINT

Plaintiffs Kristy Johnson and Jessica Jones ("Plaintiffs"), through their undersigned counsel, individually, and on behalf of all other similarly situated persons, file this Collective and Class Action Complaint ("Complaint") against Defendant Life Care Centers of America, Inc. ("Defendant" or "Life Care Centers"), seeking all available remedies under the Fair Labor Standards Act ("FLSA") and Indiana state law, for failure to pay all wages owed. The following allegations are based on personal knowledge as to Plaintiffs' own conduct and are made on information and belief as to the acts of others.

## JURISDICTION AND VENUE

1. Jurisdiction over Plaintiffs' FLSA claim is proper under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

2. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff Johnson's state law claims, because those claims derive from a common nucleus of operative facts.

3. Venue in this Court is proper pursuant to 28 U.S.C. § 1391. Life Care Centers is incorporated in Tennessee and Life Care Centers is headquartered and conducts business in the

Eastern District of Tennessee, and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred within this District.

## PARTIES

4. Plaintiff Kristy Johnson is a resident of Pekin, Indiana. Plaintiff was employed by Life Care Centers as a Certified Nurse Assistant (CNA) from approximately August 2024 to July 2025 at its Mitchell Manor and Green Valley facilities located in Indiana Pursuant to 29 U.S.C. § 216(b), Plaintiff has consented in writing to be a Plaintiff in this action. *See* Exhibit A.

5. Plaintiff Jessica Jones is a resident of Hohenwald, Tennessee. Plaintiff was employed by Life Care Centers as a Certified Nurse Assistant (CNA) from approximately August 2024 to March 2025 at its Centerville facility located in Tennessee. Pursuant to 29 U.S.C. § 216(b), Plaintiff has consented in writing to be a Plaintiff in this action. *See* Exhibit B.

6. Defendant Life Care Centers of America, Inc. ("Defendant" or "Life Care Centers") is registered Tennessee corporation with its principal place of business in Cleveland, Tennessee.

7. The unlawful acts alleged in this Complaint were committed by Life Care Centers and/or Life Care Centers' officers, agents, employees, or representatives, while actively engaged in the management of Life Care Centers' businesses or affairs and with the authorization of Life Care Centers.

8. Life Care Centers employed Plaintiffs and continues to employ similarly situated employees as defined by the FLSA, 29 U.S.C. § 203(d). *See also* 29 C.F.R. 791.2(a).

9. During all times relevant, Plaintiffs were employees of Life Care Centers and covered by the FLSA.

10. During all times relevant, Life Care Centers was an employer and/or enterprise covered by the FLSA.

11. At all times material to this action, Life Care Centers has been engaged in commerce or in the production of goods for commerce as defined by the FLSA. It provides health care services and operates healthcare facilities across at least seven states; sells and markets its services across state lines and throughout the United States; uses telephonic transmissions crossing state lines to do business; accepts and utilizes products, medications and medical supplies that have shipped across state lines; and uses connected health technology and telehealth systems that allow access to its services from different locations and across state lines.

12. Life Care Centers' annual gross sales exceeds $500,000.00.

## COLLECTIVE AND CLASS DEFINITIONS

13. Plaintiffs bring Count I of this lawsuit pursuant to the FLSA, 29 U.S.C. § 216(b), as a collective action on behalf of themselves and the following proposed collective:

> All current and former non-exempt, hourly-paid employees of Life Care Centers in the United States during the past three (3) years and who worked in excess of forty (40) in a workweek (the "FLSA Collective").

14. Plaintiff Johnson brings Counts II-III of this lawsuit as a class action pursuant to Fed. R. Civ. P. 23, on behalf of herself and the following class:

> All current non-exempt employees and former non-exempt employees (if they voluntarily terminated their employment) who were employed by Life Care Centers in the state of Indiana during the three (3) years prior to the filing of this Complaint (the "Indiana Class").

15. The FLSA Collective and the Indiana Class are together referred to as the "Class" and the members of the Class are "Class Members."

16. Plaintiffs reserve the right to redefine the Classes prior to notice or certification, and thereafter, as may be warranted or necessary.

# FACTUAL BACKGROUND

## *Life Care Centers' Facilities and Management*

17. Life Care Centers is a privately company that operates as a large, multi-state provider of post-acute care and other healthcare services.

18. Life Care Centers operates approximately 200 healthcare centers across at least twenty-seven (27) states and employs more than 38,000 employees.

19. Life Care Centers operates a diverse range of facilities and services including: skilled nursing rehabilitation centers; inpatient and outpatient rehabilitation; post-operative recovery; and other services such as Alzheimer's and dementia care.

20. Life Care Centers operates this diverse portfolio of services and facilities as a single, integrated, and centrally managed enterprise. This structure involves a top-down management approach with a central corporate office that oversees the management, operations, standards, and strategic direction of all the facilities in its network.

21. Life Care Centers' mission statement asserts its commitment to being a "premier provider of long-term health care" and the "facility of choice in any community in which we operate."[1]

22. Life Care Centers' facilities self-report to the federal Centers for Medicare and Medicaid Services ("CMS"), that they are an "affiliated entity" within the "Life Care Centers of America." Facilities further report Life Care Centers maintains managerial control over the individual facility.[2]

---

[1] Life Care Centers of America, Mission & Values, https://lcca.com/about/mission Last visited December 1, 2025.

[2] *See, e.g.*, https://www.medicare.gov/care-compare/details/nursing-home/445252 (Centerville); https://www.medicare.gov/care-compare/details/nursing-home/155324/ (Mitchell Manor);

23. Life Care Centers' website serves as a single, comprehensive resource for all information related to Life Care Centers' services across all its locations, presenting a unified brand identity to the public.

24. By way of example, the website includes monthly blog posts that showcase various events happening across its facilities across the country.[3]

25. Life Care Centers also issues a quarterly publication, titled "Life Matters," that provides employees, residents, patients, and community members with regular, centralized communication regarding company news, facility features, health-related articles, and resident responses. For instance, the December 2020 publication showcased the eighty (80) facilities that made the U.S. News & World Report Best Nursing Home list.[4]

26. Similarly, Life Care Centers' LinkedIn page is a centralized account, describing its facilities and services across multiple states and confirming it employs more than 38,000 employees.[5]

27. Life Care Centers maintains a centralized human resources function and has power over personnel and payroll decisions regarding Plaintiffs and Class Members. Life Care Centers has the power to hire and fire Plaintiffs and Class Members, establish and pay wages, and maintain

---

https://www.medicare.gov/care-compare/details/nursing-home/155070/ (Green Valley). Last visited December 1, 2025.

[3] *See e.g.,* LCC – Blog – Facility Happenings, October 2025 https://lcca.com/blog/Facility-Happenings-Oct2025 Last visited December 1, 2025.

[4] *See* A Publication of Life Care Centers of America – Life Matters, Vol 17, No.1 https://lcca.com/images/publications/LM-Winter-2020.pdf. Last visited December 1, 2025.

[5] *See* https://www.linkedin.com/company/life-care-centers-of-america/ Last visited December 1, 2025.

employment records.

28. Life Care Centers' website advertises its open positions across all facilities in multiple states under a single "Careers" tab, demonstrating a unified approach to recruitment and hiring.[6]

29. All Life Care Centers employees are eligible for the same employee benefits, including a single 401(k) plan with over 24,361 plan participants as of December 31, 2024. According to its 5500 filing, Life Care Centers of America, Inc. 401(K) Savings Plan (the "Retirement Plan") is a "single-employer plan." The Retirement Plan thus treats employees as part of one large entity rather than separate facility-specific groups. Employees can participate immediately after their hire date. Before 2024, participants became eligible after completing six months of service and attaining age twenty-one (21) or older.

30. Other uniform employee benefits offered to Life Care Centers' employees include paid holidays, medical insurance (for full time employees), Health Savings Accounts, Medical Flexible Spending Accounts, dental, vision, and short- and long-term disability, and an Employee Assistance Program. The uniform nature of employee benefits further illustrates the integrated nature of Life Care Centers' workforce and benefit administration.

31. Life Care Centers maintains an employee awards program—the "Whatever It Takes Champions" program—that encompasses all its facilities and honors employees who go beyond their job descriptions in serving residents, families, and fellow employees. Life Care Centers honors these employees with a specialized feature on its website.[7]

---

[6] https://lifecarecareers.hcshiring.com/jobs Last visited December 1, 2025.

[7] *See e.g.,* LCC- Excellence in Care – Whatever It Takes Winners for Sept. 2025, https://lcca.com/locations/in/mitchell-manor/blog/WIT-SkilledNursing-Award; LCC - Champions of Care – Whatever It Takes Winners for August 2025,

32. Life Care Centers enforces the use of standardized policies and procedures across all facilities for patient care, quality assurance, and regulatory compliance, as detailed in the company's Code of Conduct and Compliance and Ethics Program.[8] The "Code of Conduct" applies to all Life Care Centers' employees, officers, members of the Board of Directors, and others when acting on behalf of the company. The Compliance and Ethics Program outlines required trainings for employees to ensure compliance with laws, regulations, the Code of Conduct, policies and procedures, and the provision of quality care to Company residents and patients.

33. It is clear, based upon Life Care Centers' website, LinkedIn page, employee benefit and awards programs, and company policies that all Life Care Centers locations are subject to the same and/or similar management and policies.

### *Life Care Centers Failed to Pay for All Hours Worked*

34. Life Care Centers does not pay Plaintiffs and Class Members for all hours worked and the proper overtime premiums for all hours worked in excess of forty (40) hours in a workweek.

35. Plaintiff Kristy Johnson was employed by Life Care Centers as a CNA from approximately August 2024 to July 2025 in Indiana.

36. Plaintiff Jessica Jones was employed by Life Care Centers as a CNA from approximately August 2024 to March 2025 in Tennessee.

37. Plaintiffs and Class Members are non-exempt hourly employees who provide care

---

https://lcca.com/locations/in/mitchell-manor/blog/WIT-August-2025 Last visited December 1, 2025.

[8] *See* LCC – Compliance & Ethics Program, June 16, 2025, https://lcca.com/downloads/Compliance-Program.pdf; LCC – Code of Conduct, 2024 https://lcca.com/downloads/Code-of-Conduct-2024.pdf. Last visited December 1, 2025.

and related activities for Life Care Centers' residents pursuant to Life Care Centers' rules, regulations, guidelines, and policies.

38. Plaintiffs and Class Members perform no job duties or functions that qualify for any FLSA overtime exemption.

39. Plaintiffs and Class Members are non-exempt hourly employees who provide care and activities for Life Care Centers' residents pursuant to Life Care Centers' rules, regulations, guidelines, and policies.

40. Plaintiffs and Class Members are similarly situated with respect to their job duties. Their duties include, but are not limited to, providing activities of daily living (*e.g.*, bathing, grooming, dressing, meals, etc.); documenting vital signs, weight, meal intake, bowel and bladder, etc.; identifying special resident problems and reporting them immediately to the nurse; taking an active role to help problem-solve to resolve the issues; reviewing resident profiles and perform nursing cares as outlined; observing infection control procedures; ensuring the resident is left in a safe environment; and ambulating and transferring resident per their transfer policy.

41. Plaintiffs and Class Members perform no job duties or functions that qualify for any FLSA overtime exemption.

42. While exact job titles may differ, these hourly Class Members are subjected to the same or similar illegal pay practices for similar work.

43. Given the nature of the work, Plaintiffs and Class Members regularly work more than forty (40) hours in a workweek.

44. Plaintiff Johnson worked on average fifty (50) to sixty (60) hours per week.

45. Plaintiff Jones worked on average fifty (50) hours per week.

46. Plaintiffs observed other Class Members working similar schedules.

47. At all relevant times, Life Care Centers has maintained a policy and practice whereby hourly employees are encouraged and/or required to work off-the-clock.

48. Indeed, Plaintiffs and Class Members are often required to work through meal breaks without proper compensation. Specifically, Life Care Centers automatically deducted a thirty (30) minute meal break from Plaintiffs' and Class Members' paychecks, whether a meal break was actually taken.

49. Plaintiff Johnson was required to work through her meal breaks most of her shifts because she was required to be caring for patients and/or charting medical information of patients. Despite working through her meal breaks, Life Care Centers deducted thirty (30) minutes from her paychecks.

50. Plaintiff Johnson's experience working through meal breaks was the same at the two (2) Indiana facilities (Mitchell Manor and Green Valley) she worked at.

51. Plaintiff Jones was required to work through her meal breaks at least two times per week because she was required to be caring for patients and/or charting medical information of patients. Despite working through her meal breaks, Life Care Centers deducted thirty (30) minutes from her paychecks.

52. Plaintiff Jones was not aware of any system for reporting missed meal breaks. Plaintiff Jones complained to the director of nursing about meal breaks but there were no changes implemented, and Life Care Centers continued to deduct thirty (30) minutes from her paychecks for missed meal breaks.

53. Plaintiffs observed that other Class Members worked through their meal breaks and were not compensated for their working time.

54. Plaintiffs also spoke with Other Class Members about working through meal

breaks.

55. Life Care Centers knew Plaintiffs and Class Members did not take thirty (30) minute uninterrupted meal breaks because Life Care Centers' supervisors observed Plaintiffs and Class Member work throughout their entire shifts without taking a break.

56. Plaintiffs and Class Members also worked off-the-clock to complete required trainings through Life Care Centers' Relias training portal.

57. Relias provides continuing education and compliance training for healthcare professionals. These trainings consisted of online modules that covered various aspects of patient care. Plaintiffs and Class Members were required to watch videos and then complete quizzes on the information. If a Class Member failed a quiz, they were expected to prepare for and retake the quiz until they passed.

58. Trainings averaged from three (3) to five (5) hours long per month depending on how many trainings were assigned each month. Sometimes trainings required eight (8) hours per month complete, and even more if a Class Member did not pass the quiz on the first try.

59. Life Care Centers expected Class Members to complete these monthly trainings, but did not provide time during Class Members' shifts to do so. As a result, Plaintiffs often completed these trainings off-the-clock, without compensation for their time worked.

60. Plaintiff Jones did not always have time to do the trainings during her shift, but knew that she was required to finish them, so she often undertook the trainings while at home, off-the-clock.

61. Plaintiff Johnson regularly completed Relias trainings off-the-clock without compensation. She was typically only able to complete one (1) to two (2) hours of training per month while she was at work and was required to complete the rest of the trainings at home.

62. Plaintiff Johnson is aware that other Class Members, such as her daughter, who was also employed by Life Care Centers, completed these mandatory trainings outside of working hours.

63. As a result of Life Care Centers policies of auto-deducting meal breaks and failing to pay for required trainings, Life Care Centers fails to keep accurate records of the hours that Plaintiffs and Class Members work and fails to provide accurate wage statements to Plaintiffs and Class Members that reflect all hours worked.

*Life Care Centers Willfully Violated the FLSA and Indiana Laws*

64. Life Care Centers' actions in violation of the FLSA as set forth herein were and are made willfully to avoid liability under the FLSA and state law. Such willfulness is demonstrated by, or may be reasonably inferred from, Life Care Centers' actions and failures to act.

65. Life Care Centers fails to maintain accurate records of the actual hours that Plaintiffs and Class Members worked each workday, and the total hours worked each workweek.

66. Life Care Centers knew or should have known that the work that they required of Plaintiffs and other Class Members should have been paid for all time working through meal breaks and completing required trainings.

67. Life Care Centers is a sophisticated national business with access to knowledgeable human resource specialists and competent legal counsel who can and should advise Life Care Centers of their obligations under the FLSA and state law.

68. Life Care Centers knew or should have known that Plaintiffs and Class Members are entitled to overtime wages for all hours worked because Life Care Centers classified Plaintiffs and Class Members as non-exempt under the FLSA.

69. By failing to pay all the compensation owed, including overtime compensation, to

Plaintiffs and other non-exempt employees as detailed above, Life Care Centers acted willfully and in reckless disregard of clearly applicable FLSA and state law obligations.

70. Life Care Centers has not made good faith efforts to comply with the FLSA and Indiana state law.

## COLLECTIVE ACTION ALLEGATIONS

71. Plaintiffs bring this lawsuit pursuant to 29 U.S.C. § 216(b) as a collective action on behalf of themselves and the FLSA Collective as defined above.

72. Plaintiffs desire to pursue their FLSA claim on behalf of all individuals who opt in to this action pursuant to 29 U.S.C. § 216(b).

73. Plaintiffs and the FLSA Collective are "similarly situated" as that term is used in 29 U.S.C. § 216(b) because, *inter alia*, all such individuals currently work or have worked pursuant to Life Care Centers' common business and payroll practices as described herein, and, as a result of such practices, have not been paid overtime compensation due as described herein. Resolution of this action requires inquiry into common facts, including, inter alia, Life Care Centers' common compensation and payroll practices.

74. These similarly situated employees are known to Life Care Centers, readily identifiable, and can be easily located through Life Care Centers' business records.

75. Life Care Centers employs and has employed many FLSA Collective members throughout the United States. These similarly situated current and former employees may be readily notified of this action through U.S. mail and/or other reasonable means, and allowed to opt in to this action, pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for unpaid wages, liquidated damages, interest, attorney's fees, and costs under the FLSA.

## CLASS ACTION ALLEGATIONS

76. Plaintiff Johnson brings this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of themselves and the Indiana Class defined above.

77. The members of the Indiana Class are so numerous that joinder of all members is impracticable. Upon information and belief, there are more than forty (40) members of the Indiana Class.

78. Life Care Centers has engaged in the same conduct towards Plaintiff and the other members of the Indiana Class.

79. The injuries and damages to the Indiana Class present questions of law and fact that are common to each class member within the Indiana Class, and that are common to the Indiana Class as a whole.

80. Plaintiff will fairly and adequately represent and protect the interests of the Indiana Class, and all of its potential class members because there is no conflict between the claims of Plaintiff and those of the Indiana Class, and Plaintiff's claims are typical of the claims of the Indiana Class.

81. Plaintiff's counsel are competent and experienced in litigating class actions and other complex litigation matters, including wage and hour cases like this one.

82. Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Indiana Class predominate over any questions affecting only individual Class members including, without limitation: (1) whether Life Care Centers paid them for all time worked; and (2) whether Life Care Centers failed to pay them the full amount of overtime compensation earned.

83. Plaintiff's claims are typical of the claims of the Indiana Class in the following ways, without limitation: (a) Plaintiff is a member of the Indiana Class; (b) Plaintiff's claims arise

out of the same policies, practices and course of conduct that form the basis of the claims of the Indiana Class; (c) Plaintiff's claims are based on the same legal and remedial theories as those of the Indiana Class and involve similar factual circumstances; (d) there are no conflicts between the interests of Plaintiff and the members of the Indiana Class; and (e) the injuries suffered by Plaintiff are similar to the injuries suffered by the members of Indiana Class.

84. Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated individuals to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. The Indiana Class are readily identifiable from Life Care Centers' employment records. Prosecution of separate actions by individual members of the Indiana Class would create the risk of inconsistent or varying adjudications with respect to individual Class Members that would establish incompatible standards of conduct for Life Care Centers.

85. A class action is superior to other available methods for adjudication of this controversy because joinder of all members is impractical. Further, the amounts at stake for many of the members of the Indiana Class, while substantial, are not great enough to enable them to maintain separate suits against Life Care Centers.

86. Without a class action, Life Care Centers will retain the benefit of their wrongdoing, which will result in further damages to Plaintiff and the Indiana Class. Plaintiff envisions no difficulty in the management of this action as a class action.

# COUNT I
## Violation of the FLSA
### (On Behalf of Plaintiffs and the FLSA Collective)

87. All previous paragraphs are incorporated as though fully set forth herein.

88. The FLSA requires that covered employees be compensated for all hours worked in excess of forty (40) hours per week at a rate not less than one and one-half (1½) times the regular rate at which he is employed. *See* 29 U.S.C. § 207(a)(1).

89. Life Care Centers is subject to the wage requirements of the FLSA because Life Care Centers is an "employer" under 29 U.S.C. § 203(d).

90. At all relevant times, each of Life Care Centers was, and continues to be, an "employer" engaged in interstate commerce and/or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203.

91. During all relevant times, the members of FLSA Collective, including Plaintiffs, were covered employees entitled to the above-described FLSA's protections. *See* 29 U.S.C. § 203(e).

92. Plaintiffs and the FLSA Collective are not exempt from the requirements of the FLSA.

93. Plaintiffs and the FLSA Collective are entitled to be paid overtime compensation for all hours worked over forty (40) in a workweek.

94. Life Care Centers fails to properly compensate Plaintiffs and the FLSA Collective for all hours worked when they worked in excess of forty (40) hours per week by auto-deducting thirty (30) minutes from Plaintiffs' and the FLSA Collective's paychecks even when they worked through their meal breaks.

95. Life Care Centers further fails to properly compensate Plaintiffs and the FLSA

Collective for all hours worked as a result of their policy of requiring off-the-clock work for Plaintiffs and the FLSA Collective to complete required trainings.

96. Life Care Centers fails to create, keep, and preserve accurate records with respect to work performed by Plaintiffs and the FLSA Collective sufficient to determine their wages, hours, and other conditions of employment in violation of the FLSA, 29 U.S.C.A. § 211(c); 29 C.F.R. §§ 516.5(a), 516.6(a)(1), 516.2(c).

97. Life Care Centers' actions violated and continue to violate the FLSA and its implementing regulations.

98. In violating the FLSA, Life Care Centers has acted willfully and with reckless disregard of clearly applicable FLSA provisions.

99. Pursuant to 29 U.S.C. § 216(b), employers such as Life Care Centers, who fail to pay employee wages in conformance with the FLSA shall be liable to the employee for unpaid wages, liquidated damages, court costs and attorneys' fees incurred in recovering the unpaid wages.

## COUNT II
### Violation of the Indiana Wage Payment Statute, Ind. Code § 22-2-5-1, *et seq*.
### (On Behalf of Plaintiff Johnson and the Indiana Class)

100. All previous paragraphs are incorporated as though fully set forth herein.

101. Plaintiff Johnson and members of the Indiana Class voluntarily quit or are currently employed by Life Care Centers.

102. At all relevant times, Plaintiff and members of the Indiana Class have been entitled to the rights, protections, and benefits provided under the IWPS, Ind. Code § 22-2-5-1, *et seq*.

103. At all relevant times, Plaintiff and other Indiana Class Members were "employees" of Life Care Centers within the meaning of the IWPS. Ind. Code § 22-2-5-1(a).

104. Life Care Centers is subject to the IWPS requirements because Life Care Centers is an employer under Ind. Code § 22-2-2-3.

105. Pursuant to IWPS, "[e]very person, firm, corporation, limited liability company, or association, their trustees, lessees, or receivers appointed by any court, doing business in Indiana, shall pay each employee … the amount due the employee." Ind. Code § 22-2-5-1(a).

106. Plaintiff and Indiana Class Members seek to recover under the IWPS the difference between what they were paid by Life Care Centers for regular and overtime hours worked and the amount to which they were entitled by law.

107. Life Care Centers has not paid Plaintiff and other Indiana Class Members who are currently employed by Life Care Centers or who voluntarily left their employ their due and owing wages that they are entitled to by operation of law.

108. By failing to compensate Plaintiff and Indiana Class Members who are currently employed by Life Care Centers who voluntarily left their employ for their hours worked within the necessary time frame after they became due, Life Care Centers is also liable to Plaintiff and Indiana Class Members under the IWPS.

109. Separately, Life Care Centers also fails to pay Plaintiff and Indiana Class Members their wages due on their next and usual payday.

110. Life Care Centers' violations of the IWPS are willful and are not actions and omissions made in good faith.

111. Plaintiff and Indiana Class Members are entitled to their wages due, double the amount of wages due, and reasonable attorneys' fees and costs as required by Ind. Code § 22-2-5-2.

## COUNT III
### Unjust Enrichment Under Indiana Law

**(On Behalf of Plaintiff Johnson and the Indiana Class)**

112. All previous paragraphs are incorporated as though fully set forth herein.

113. This count is brought against Life Care Centers pursuant to the common law doctrine of unjust enrichment.

114. Indiana courts articulate three elements for [unjust enrichment] claims: (1) a benefit conferred upon another at the express or implied request of this other party; (2) allowing the other party to retain the benefit without restitution would be unjust; and (3) the plaintiff expected payment." *Woodruff v. Indiana Family & Soc. Servs. Admin.,* 964 N.E. 2d 784, 791 (Ind. 2012).

115. Life Care Centers has received and benefited from Plaintiff's uncompensated labors, along with that of the other members of the Indiana Class, such that to retain said benefit without compensation would be inequitable and rise to the level of unjust enrichment.

116. At all relevant times hereto, Life Care Centers devised and implemented a plan to increase its earnings and profits by fostering a scheme of securing work from Plaintiff and Indiana Class Members without paying for all hours worked under forty (40) in a workweek, known as "gap time" or "straight time."

117. Contrary to all good faith and fair dealing, Life Care Centers induced Plaintiff and the Class Members to perform work while failing to pay compensation for all hours worked for weeks in which Plaintiff and the Class worked under forty (40) hours a week as required by law.

118. By reason of having secured the work and efforts of Plaintiff and the Class without paying "straight time" or "gap time" compensation as required by law, Life Care Centers enjoyed reduced overhead with respect to its labor costs, and therefore, realized additional earnings and profits to their own benefit and to the detriment of Plaintiff and the Indiana Class. Life Care Centers retained and continue to retain such benefits contrary to the fundamental principles of justice,

equity, and good conscience.

119. Accordingly, Plaintiff and the Indiana Class are entitled to judgment in an amount equal to the benefits unjustly retained by Life Care Centers.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs seek the following relief on behalf of themselves and all others similarly situated:

    a.    An order permitting this litigation to proceed as an FLSA collective action pursuant to 29 U.S.C. § 216(b);

    b.    Prompt notice, pursuant to 29 U.S.C. § 216(b), of this litigation to all potential FLSA Collective Members;

    c.    An order permitting this litigation to proceed as a class action pursuant to Fed. R. Civ. P. 23 on behalf of the Indiana Class;

    d.    Back pay damages and prejudgment interest to the fullest extent permitted under the law;

    e.    Liquidated damages to the fullest extent permitted under the law;

    f.    Punitive damages as permitted under the law;

    g.    Litigation costs, expenses and attorneys' fees to the fullest extent permitted under the law; and

    h.    Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Plaintiffs hereby demand a jury trial on all claims and issues.

Dated: November 24, 2025                    Respectfully submitted,

                                                            /s/ Micah S. Adkins
                                             Micah S. Adkins
                                             TN Bar No. 036451
                                             **THE ADKINS LAW FIRM, P.C.**
                                             8150 N. Central Expressway, Suite 1000
                                             Dallas, TX 75206
                                             Main Tel: 214.974.4030

Direct Tel: (615) 370.4099
MicahAdkins@ItsYourCreditReport.com

Camille Fundora Rodriguez*
Olivia Lanctot*
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4620
crodriguez@bergermontague.com
olanctot@bergermontague.com

Mariyam Hussian*
**BERGER MONTAGUE PC**
110 N. Wacker Drive, Suite 2500
Chicago, IL 60606
Telephone: (773) 666-4316
mhussain@bergermontague.com

*Attorneys for Plaintiffs and the
Proposed FLSA Collective and Indiana Class*

*\* Motion for Pro Hac Vice forthcoming*